Louis C. Stringer,

*vs.*

Electronics Supply Corporation, a corporation of the State of Delaware.

*New Castle, August* 8, 1938.

*William S. Potter*, of the firm of Ward & Gray, and *David F. Anderson*, for complainant.

*William Prickett* and *Clarence C. Dill* and *James W. Gum*, both of Washington, D. C., for defendant.

THE CHANCELLOR: The bill speaks of the statements which Errion made to the complainant in the settlement of the terms of their agreement as the "fraudulent representation of said defendant, acting by and through its president, Edgar R. Errion," by which the complainant was induced to make the assignments. But the facts show that there was no "fraudulent representation" as that phrase is understood in the law of rescission. In the first place when Errion made his statements, the corporation was not in existence. He could not then have been its president. In the next place the statements were not representations of existing facts. They were promises.

The case as shown by the bill is in the category of one where a promoter of a corporation makes a promise, amounting to a contract obligation, that the corporation when formed will do certain things, and the promisee seeks,

after the corporation is formed, to hold the corporation to the obligation of the promoter's promise, either by way of damages, or specific performance or, as in this case, by way of rescission.

Ehrich in his work on *Promoters* (1916) states the law to be "well settled that contracts made for a projected corporation by its promoters, are not binding upon it." In 1 *Fletcher, Cyclopedia of Corporations, (Perm. Ed.)* at § 205, it is said that "a promoter's contract is not a corporate obligation of its own force, but only when a statute or the charter makes it become such, or some subsequent corporate act adopts it or assumes the liability." Many cases are cited in support of this principle.

There is no statute in this State which fastens the obligation of a promoter's antecedent contract on the corporation. The bill in this case does not allege any provision in the charter of the defendant which does so.

If the defendant had adopted the agreement which Errion made with the complainant, then the contract would have become the defendant's. *Commissioners of Lewes v. Breakwater Fisheries Co.,* 13 *Del. Ch.* 234, 117 *A.* 823; *Stevens v. Acadia Dairies,* 15 *Del. Ch.* 248, 135 *A.* 846. But the bill does not show an adoption by the defendant of Errion's agreement. All it shows is that the defendant bought the complainant's patent applications and paid therefor its stock. If Errion were the only other stockholder in the corporation there might be some justification in saying that the corporate creature as an entity distinct from the complainant and Errion should be ignored, and the controversy considered as one between two individuals. But Errion and the complainant are not the only stockholders. Davis acquired two hundred and fifty shares originally. The bill does not pretend to say that he gave no consideration for them. It cannot be presumed that he got them for nothing. Furthermore, this is clear from the

bill, viz., that as to two hundred and ninety-three and two-thirds shares which the complainant himself turned back to the corporation for sale, Davis paid to the corporation twenty-five thousand dollars therefor.

Under these circumstances I am of the opinion that the complainant is not entitled to rescind his contract of sale to the corporation. He may possibly have a recourse against Errion personally. If it be true as the bill alleges that Errion gave nothing for his stock, the complainant would have the right in a proper suit to seek appropriate relief against Errion's continued holding of the stock.

The demurrer will be sustained.